UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| HUNTER R. LEVI, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:12CV1209 JCH |
| ) | |
| ANHEUSER-BUSCH COMPANIES, LLC, ) | |
| ) | |
| Defendant(s). ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment (ECF No. 85) and on Plaintiff's Motion to Add A Defendant (ECF No. 90), Motion for Rule 55 Default Judgment (ECF No. 99), Motion for Summary Judgment (ECF No. 103), and Rule 15 Motion to Add A Defendant (ECF No. 104). As an initial matter, Plaintiff's two motions to add additional defendants are denied as not in compliance with the Case Management Order in this case, as all additional parties were required to be joined by February 18, 2013.[1] See ECF No. 40, p. 1, ¶ 2.

The remaining motions are fully briefed. Since the Court finds Defendant is entitled to judgment as a matter of law, the Court will grant Defendant's Motion for Summary Judgment and deny Plaintiff's motions as moot.

## BACKGROUND

Plaintiff Hunter Levi ("Plaintiff" or "Levi") was employed by Anheuser-Busch, LLC (formerly Anheuser-Busch, Inc.) he was terminated in 2003. (Anheuser-Busch Companies, LLC's Statement of Uncontroverted Material Facts in Support of Its Motion for Summary Judgment

---

[1] Plaintiff's motions to add additional defendants were filed on June 18, 2013, and July 15, 2013, respectively.

("ABC's SUMF"), ECF No. 87, ¶ 1). Anheuser-Busch, LLC is a wholly owned subsidiary of Defendant Anheuser-Busch Companies, LLC ("Defendant" or "ABC"). (Id., ¶ 2).

Plaintiff was suspended with intent to discharge on February 14, 2003, following a hostile altercation with supervisors in which Plaintiff refused to cooperate with ABC personnel and used abusive and threatening language. (Id., ¶ 8). By letter dated March 5, 2003, Plaintiff's suspension was converted to a discharge effective that date. (Id., ¶ 9). In accordance with existing practices, Plaintiff's discharge date was entered into the databases used by Defendant's People department on March 5, 2003. (Id., ¶ 10). Plaintiff's union challenged his discharge, and the matter proceeded to arbitration. (Id., ¶ 11). By summary decision dated August 1, 2003, the arbitrator upheld Plaintiff's discharge. (Id., ¶ 13). The arbitrator's more fully explicated decision, dated September 22, 2003, concluded there was just cause for Plaintiff's discharge in light of his conduct on February 14, 2003; his prior discipline; and his failure to show any remorse for his conduct. (Id., ¶¶ 12, 14).

After the arbitrator upheld Plaintiff's discharge in August 2003, a check was issued to Plaintiff to compensate him for any accrued vacation or sick pay. (Id., ¶ 19). The paperwork used to issue that check listed Plaintiff's discharge date as March 5, 2003. (Id., ¶ 20).

In or around 2011, Plaintiff requested information from the Anheuser-Busch Retirement Plans department concerning his pension benefits under the St. Louis Brewery Workers Pension Plan ("Plan"). (Id., ¶ 21). In response to Plaintiff's pension inquiry, an employee in the Retirement Plans department gathered information concerning Plaintiff and placed it on an Application for Pension form ("Application"). (Id., ¶ 24). An Application is used to determine, based on the applicable plan terms, a participant's employment tenure, expected date of retirement, and pension benefits to which a participant is entitled. (Id.). For purposes of calculating estimated pension benefits, the Retirement

Plans department uses the day prior to a participant's termination. (Id., ¶ 27). Therefore, the date used to calculate Plaintiff's estimated pension benefits was March 4, 2003. (Id.).

Plaintiff's Application was then sent to Zenith American Solutions (formerly Zenith Administrators), the third-party administrator for the Plan. (Id., ¶ 30). Zenith American Solutions ("Zenith") used its own records to calculate Plaintiff's estimated pension benefits. (Id., ¶ 31). Using those records, a Zenith Pension Processor determined that February 2003 was the last month Plaintiff performed work for ABC and the last month for which ABC made a pension contribution for Plaintiff. (Id., ¶ 32). According to those records, ABC made that contribution in March 2003. (Id., ¶ 33). Because the records maintained by Zenith showed the last pension contribution for Plaintiff was for February 2003, that was the month used by the Zenith Pension Processor to calculate Plaintiff's pension benefits. (Id., ¶ 34). Once the Zenith Pension Processor filled in additional entries on Plaintiff's Application, she used that information to prepare a Benefit Determination Worksheet ("Worksheet"). (Id., ¶ 35). The Anheuser-Busch Retirement Plans department provided Plaintiff with the Worksheet and a cover letter dated May 12, 2011. (Id., ¶ 36).

In June 2011, Plaintiff began submitting letters to the Plan trustees objecting to the estimated pension calculation. (Id., ¶ 37). The trustees denied Plaintiff's various arguments regarding the amount of his estimated pension benefits. (Id., ¶ 42).

In November 2012, Plaintiff requested information concerning his benefits under a supplemental pension plan. (Id., ¶ 43). After the trustee for the pension plan responded to his inquiry, Plaintiff filed an appeal, which remains pending before the trustee for the supplemental pension plan. (Id., ¶¶ 44, 45).

Plaintiff filed this action in this Court on July 3, 2012, asserting claims against Anheuser-Busch InBev N.V./S.A. ("AB InBev") and Anheuser Busch Companies, Inc.[2] Plaintiff contends that, in violation of his union's collective bargaining agreement, Defendant "secretly" terminated him on March 4, 2003,[3] in order to avoid making payments to Plaintiff's pension account. Plaintiff's Complaint alleges violations of Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and Section 510 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140.[4] The Court dismissed Defendant AB InBev without prejudice on June 11, 2013, due to Plaintiff's failure to commence service of process on Defendant AB InBev. (See Order, ECF No. 84).

**STANDARD**

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might

---

[2]The Court previously determined that Plaintiff's Complaint (ECF No. 1) and Plaintiff's Amendment of Pleadings (ECF No. 46) together constitute Plaintiff's operative pleading in this case. (See Order dated February 27, 2013, ECF No. 53). The Court will refer to both documents as encompassing "Plaintiff's Complaint."

[3]While Plaintiff's Complaint claims his termination occurred on March 4, 2003, Plaintiff's Response to Defendant's Motion for Summary Judgment ("Plaintiff's Response") claims his termination occurred on March 5, 2003. The Court finds the discrepancy between the dates of Plaintiff's alleged "secret" termination does not affect its evaluation of the motions before it.

[4]Defendant's Motion for Summary Judgment includes a discussion of Plaintiff's purported claims under MO. REV. STAT. § 290.140. Plaintiff's Response indicates that Plaintiff "has not filed a cause of action against [Defendant] under Mo. Rev. 290.140." (Plaintiff's Response, ECF No. 97, p. 4). The Court will therefore read Plaintiff's Complaint as only alleging violations of 29 U.S.C. § 185 and 29 U.S.C. § 1140.

affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." FED. R. CIV. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Id. at 249.

## DISCUSSION

As indicated above, Plaintiff alleges violations of § 310 of LMRA and § 510 of ERISA. Defendant argues Plaintiff has failed to put forth any evidence supporting his claims, and that as a result, Plaintiff's claims fail as a matter of law. Defendant also claims Plaintiff has failed to exhaust the grievance procedures set forth in the collective bargaining agreement at issue in this case.

**I.     Section 310 of LMRA**

Section 310 provides as follows:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce...may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

It is a settled principle that no action can be brought under 29 U.S.C. § 185(a) until a party attempts to exhaust his contractual remedies as to any claim. Petersen v. Rath Packing Co., 461 F.2d 312, 315 (8th Cir. 1972). The purpose of the exhaustion requirement is to utilize the contract grievance procedure in the collective bargaining contract as an initial method of settling disputes. Id.

The Court finds Plaintiff has not alleged compliance with the grievance procedures set forth in his collective bargaining agreement, and Plaintiff's § 310 claims must therefore fail. See Moore v. Gen. Motors Corp., 739 F.2d 311, 317 (8th Cir. 1984). Even assuming Plaintiff had exhausted the contractual remedies available under his collective bargaining agreement, Plaintiff's § 310 claims still fail because Plaintiff has not set forth any specific facts tending to show that Defendant violated the agreement. Plaintiff has not shown that Defendant's determination of Plaintiff's discharge date nor Defendant's calculation of Plaintiff's pension benefits violated his collective bargaining agreement. Plaintiff's conclusory allegations regarding Defendant's supposed violation of the agreement are insufficient to create a genuine issue of material fact. Therefore, Plaintiff's claims under § 310 will be dismissed.

## II.     Section 510 of ERISA

Section 510 provides as follows:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C.A. § 301 et seq.], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act.

29 U.S.C. § 1140.

Congress enacted § 510 primarily to prevent unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension benefits. Dewitt v. Penn-Del Directory Corp., 106 F.3d 514, 522 (3rd Cir. 1997). Section 510

> prohibits two categories of adverse employment action: 1) retaliation, where the adverse action is taken because a participant or beneficiary has exercised any right to which he is entitled under the provisions of an employee benefit plan or ERISA; and 2) interference, where the adverse action is taken for the purpose of interfering with any right to which a participant or beneficiary may become entitled under an employee benefit plan or ERISA.

Borneman v. Principal Life Ins. Co., 291 F.Supp.2d 935, 958 (S.D. Iowa 2003).

"To constitute an adverse employment action, the action must have some adverse impact on the employee. Defined another way, an adverse employment action must effectuate a material change in the terms or conditions of employment." Bechtel v. City of Belton, 250 F.3d 1157, 1162 (8th Cir. 2001) (citations and quotations omitted).

The Court finds Plaintiff has not pled sufficient facts to show an adverse employment action taken against him, and Plaintiff's § 1140 claims must therefore fail. Plaintiff asserts Defendant "secretly" terminated him in order to avoid making payments to Plaintiff's pension account. Plaintiff's § 510 claims therefore appear to fall under the interference category, as Plaintiff has not alleged he exercised any right under the Plan that resulted in retaliation against him. For purposes of Plaintiff's claims under § 510 for interference with his pension benefits, then, Plaintiff is not challenging the underlying reasons behind his discharge but rather the designation of Plaintiff's discharge date. The evidence presented by Defendant as part of its Motion for Summary Judgment shows that the designation of Plaintiff's discharge date was undertaken pursuant to Defendant's usual and customary practices. Plaintiff has not presented any evidence tending to show that Defendant's decision to list March 5, 2003, as Plaintiff's discharge date or to use March 4, 2003, as the relevant date for calculating Plaintiff's estimated pension benefits was out of the ordinary or

resulted in a loss of earned pension funds.  Again, Plaintiff's conclusory allegations regarding Defendant's allegedly improper motives are insufficient to create a genuine issue of material fact.

Even reading Plaintiff's Complaint to assert that his termination was an adverse employment action, Plaintiff has presented no facts tending to show that Defendant terminated him for the purpose of interfering with his pension benefits.  Therefore, Plaintiff's claims under § 510 will also be dismissed.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Add A Defendant (ECF No. 90) and Rule 15 Motion to Add A Defendant (ECF No. 104) are **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 85) is **GRANTED**, and Plaintiff's claims are dismissed with prejudice.  An appropriate Judgment will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Rule 55 Default Judgment (ECF No. 99) and Motion for Summary Judgment (ECF No. 103) are **DENIED** as moot.

Dated this 2nd day of August, 2013.

/s/Jean C. Hamilton  
UNITED STATES DISTRICT JUDGE